### William A. Butler and others v. Andrew Ladue and others.

*Mortgage conditioned for payment: power of sale on failure to indemnify.* A condition in a mortgage that the mortgagor shall "promptly pay and discharge all notes or other papers of his upon [which [the mortgagees] shall become indorsers or acceptors, together with all interest, costs and charges accruing thereon, so as to save said parties of the second part harmless by reason of their connection with such paper," is broken at once on a failure to pay the paper at maturity, and a right to foreclose accrues, without further action on the part of the mortgagee.

In a mortgage with the condition above set forth, the power of sale was limited to the case of the [mortgagees being damnified by paying the debts. It was held that the power of sale need not be coextensive with the condition of the mortgage, and that the remedy in equity was open for every breach of the condition, whether the parties had seen fit to provide for such breach in the power of sale or not.

*Heard July 16th and 17th. Decided December 5th.*

Appeal in Chancery from the Wayne Circuit.

On the fifteenth day of December, 1858, Ladue executed to the firm of Marvin & Stephens, a mortgage of lands, with condition and power of sale as follows:

"Provided always, and these presents are upon this express condition, that if the said party of the first part shall and does well and truly indemnify and keep harmless the parties of the second part, and their representatives, of and from all loss, costs or damages of any and every kind, by reason of their having become and intending yet to become indorsers or acceptors of the paper of said party of the first part, to an amount not exceeding ten thousand dollars in all, and if said party of the first part shall promptly pay and discharge all notes or other papers of his, upon which said parties of the second part shall or may be or become indorsers or acceptors, together with all interest, costs and charges accruing thereon, so as to save said parties of the second part harmless, by reason of their connection with such paper, it being the intention hereof that this instrument shall enure and operate as a security and indemnity in the hands of the parties of the second part, against any liabilities they may hereafter assume upon the paper of the party of the first part, to an amount not exceeding ten thousand dollars, and for which engagements this indenture of mortgage shall operate to the said parties of the second part as collateral security, then these presents and the obligation of indemnity hereby assumed by the party of the first part shall cease and be null and void. But in case of non-payment by party of first part of the said papers so to be indorsed by parties of the second part, and of its payment by the latter, or of the interest thereof, or any part of said principal or interest, at the time, in the manner and at the place above limited and specified for the payment thereof, then and in such case it shall and may be lawful for the said parties

of the second part, their heirs, executors, administrators or assigns, and the said party of the first part does hereby empower and authorize the said parties of the second part, their heirs, executors, administrators or assigns, to grant, bargain, sell, release and convey the said premises, with the appurtenances, at public auction or vendue, and on such sale to make and execute to the purchaser or purchasers, his or their heirs and assigns, forever, good, ample and sufficient deed or deeds of conveyance in law, pursuant to the statute in such case made and provided, rendering the surplus moneys (if any there should be) to the said party of the first part, his heirs, executors or administrators, after deducting the costs and charges of such vendue and sale aforesaid, and also fifty dollars, as an attorney fee, should any proceeding be taken to foreclose this indenture: and said party of the first part hereby covenants with said party of the second part so to indemnify them as is hereinbefore expressed."

In May, June and July, 1860, Ladue executed five several notes, payable to the order of Marvin & Stevens, which were indorsed by them for the accommodation of Ladue, and delivered to the complainants. These notes in the aggregate amounted to less than $10,000, and were all payable on short time. They not being paid at maturity, and the liability of Marvin & Stevens as indorsers being fixed, the complainants filed this bill, setting forth these facts, and also that Marvin, Stevens and Ladue were all insolvent, and praying that the mortgaged premises might be decreed to be sold to satisfy the said notes.

Ladue demurred to the bill, and the demurrer being overruled, he afterwards filed an answer, and the case was heard on pleadings and proofs, and decree entered for complainants as prayed.

*Douglass & Andrews* for complainants:

The mortgage is more than a mere indemnity against actual pecuniary loss. It is conditioned that the mort-

gagor "*shall promptly pay and discharge all notes*"
which the mortgagees might indorse. The added expres-
sion, "*so as to save the said parties of the second part
harmless,*" means nothing more nor less than the expres-
sion, "*and thereby save said parties harmless,*" would have
done. The mortgagor was not only to save the indorsers
harmless, but he was to do this by the *prompt* payment
of his notes at their maturity.

. The mortgage is declared to be intended as a *security*,
as well as an *indemnity;* and against any *liabilities* which
the mortgagees might assume; but it is held that a cov-
enant to indemnify against liability, is broken whenever
the liability becomes fixed: — 8 *Cow.* 639, 653; 8 *Wend.*
452; 19 *Wend.* 423; 10 *M. & W.* 293; 1 *Burr.* 574; 2
*Stark.* 167; 9 *Penn.* 371.

Referring to liabilities to be assumed by the indorsers,
the mortgage provides: "*for which engagements this inden-
ture of mortgage shall operate to the said parties of the
second part as collateral security;*" — not as a mere means
for obtaining reparation and compensation for possible
future losses, but as a collateral security, to be employed
in the most efficient manner for the protection of the
mortgagees.

So, the condition, though awkwardly and ungrammati-
cally expressed, is evidently intended to provide that the
mortgagor shall pay the indorsed notes "at the time, in
the manner, and at the place" therein stipulated.

But dismissing these verbal criticisms, it is perfectly
evident, from the whole tone of the instrument, that the
parties intended the mortgage to operate not as a pure
indemnity against actual loss — to be made available only
by a process of foreclosure, which could not occupy less
than a year, and could only be commenced after the mort-
gagees had themselves advanced the money, or had been
ruined by executions — but as a present and continuing
security, to be used by the mortgagees, and made availa-

ble as a protection to them. If the construction of the instrument be doubtful, courts will not be anxious to construe it in a manner which would defeat the end which the parties to it must have had in view.

But even if the construction claimed for the instrument by the defendant were the true one, the complainants are entitled to maintain this suit.

The indorsers, before themselves paying the debt, might have filed their bill against the principal debtor, to enforce specific performance of his covenant to indemnify them, and to have the mortgaged property applied for that purpose:— 1 *Story Eq. Juris.* §§ 327, 639; *Rice Ch.* 286; 6 *Blackf.* 491; 2 *Head,* 549; 36 *N. H.* 217; 13 *Vt.* 88; 4 *Jones Eq.* 212; 2 *Rich Eq.* 179; *Ibid.* 22.

Whatever may be the rule at law, courts of equity consider and treat a security given by the debtor, to either the surety or the creditor, as held in trust for the other — not in virtue of any supposed agreement of the parties to that effect, but because substantial justice and equity requires it. It is a fund appropriated by the debtor for the payment of the debt, and regardless of, and even in opposition to, the expressed intentions of the parties, a court of equity will appropriate the fund directly to its ultimate destination, whenever, from the insolvency of the parties, or other cause whatever, it is manifest that substantial justice cannot otherwise be accomplished: — 1 *Johns. Ch.* 119; 3 *Ired. Eq.* 520; 1 *S. & M. Ch.* 559; 11 *Conn.* 118.

If this mortgage cannot be foreclosed until the indorsers have paid the debt, then the complainants are remediless. That Marvin & Stevens are insolvent, there is no doubt. Ladue has no property except that covered by this mortgage.

We could not levy an execution on the mortgaged property:— *Comp. L.* § 3158; 4 *B. Monr.* 142; 11 *Conn.* 121.

And the result of the defendant's doctrines is, that

Ladue has, by this mortgage, effectually locked up this property where neither the complainants nor any other creditor can reach it. The indorsers are unable to pay the debt, and thereby entitle either themselves or the creditors to foreclose the mortgage. If we should obtain judgment and issue execution against the indorsers, they have no property subject to execution, and would sustain no more loss or damage than they have sustained already.

*A. Russell* for defendant Ladue:

1. This is solely an indemnity mortgage, "*to save harmless*" Marvin & Stevens from loss, cost and damage, and to pay *so as to indemnify* said Marvin & Stevens; and it could only be foreclosed on payment by. the mortgagees.

The reading of the mortgage shows the intention of the parties; that it was intended as collateral to the covenant to indemnify, and not as a trust for the payment of the debt, or for its better security. It was solely for the protection of Marvin & Stevens, who had already become indorsers for Ladue, and who were expected to indorse for him in larger amounts.

2. Complainants can only be *subrogated* to the rights possessed by the mortgagees: — *Adams' Equity*, 269 ; 14 *S. & M.* 87. The mortgagees being indemnified against "loss, cost and damages," it would be necessary for them to prove, in order to sustain an action against 'Ladue, that they have suffered actual pecuniary loss: — *Sedg. on Dams.* 303 *et. seq.*; *Cowp.* 525; 8 *Johns.* 249; 10 *Wend.* 498; 3 *Denio*, 321 ; 1 *Zab.* 73; 1 *Comst.* 550 ; 11 *Ill.* 218; 9 *Barr*, 366 ; 11 *Ala.* 702; 7 *Blackf.* 464; 1 *Chip.* 164; 3 *Vt.* 532; 3 *Wheat.* 89; 7 *Ind.* 213; *Thurston v. Prentiss*, 1 *Mich.* 193; *Mich. State Bank v. Hastings*, 1 *Doug. Mich.* 251, 256; *Griggs v. D. & M. Railway Co.*, 10 *Mich.* 117.

3. It is however claimed that, by some operation of law, and in spite of the parties to the mortgage, a trust

arises immediately on its execution, in favor of creditors not existing at the time, but coming into existence afterwards. The following cases decide the precise point at issue under this head, and are decisive of the case: — 7 *Conn.* 478; 18 *Ohio,* 35; 14 *S. & M.* 87; 10 *Leigh,* 206; 6 *Conn.* 37; 9 *S. & M.* 450; 1 *Wash. Real Prop.* 574; *Story Eq. Juris.* § 635; 1 *Lead. Cas. in Eq.* 163, 164, *American note to Derring v. Winchelsea.*

But the bill in reality is a bill to reach the equitable assets of the principal debtor, and is in the nature of a creditor's bill. To entitle a party to file a bill of this character, and obtain the relief sought by it, it is well settled that he must show that he has exhausted his legal remedies: — *Mitf. Eq. Pl.* 128; *Story Eq. Juris.* § 1216. The proper evidence of this is the production of a judgment against the [principal debtor, and execution upon it returned unsatisfied: — *Wal. Ch.* 1, 62, 28; *Barnes v. Baker,* 2 *Mich.* 380.

[Counsel also argued that it did not appear, from any thing in the case, that complainants have not a full, adequate and complete remedy at law; that the proof showed Ladue to have had, at the time of filing the bill, property more than sufficient to satisfy complainants' demands, openly and notoriously in his possession and under his control.]

BY THE COURT:

The bill in this case was filed to foreclose a mortgage, which is claimed by defendant to be one of indemnity, upon which no relief could be asked until the parties should be damnified by paying the debts secured. Complainants, on the other hand, claim that the mortgage was conditioned not only to indemnify after damage, but to pay the debts; and that a right of action accrued at once on non-payment, as decided in *Hall v. Nash,* 10 *Mich.* 303.

The mortgage, after an ordinary condition to indemnify and save harmless, proceeds: "and if said party of the

first part shall promptly pay and discharge all notes or other papers of his upon which said parties of the second part shall or may become indorsers or acceptors, together with all interest, costs and charges accruing thereon, so as to save said parties of the second part harmless by reason of their connection with such paper," &c.

This is a clear and unequivocal condition to pay, and the condition was broken at once upon a failure to meet the paper at maturity. And upon this breach a right of foreclosure arose, without further action on the part of the mortgagees.

The power of sale appended to the mortgage is undoubtedly limited to the case of the mortgagees being damnified, by paying the debts which the mortgagor failed to pay. But the power of sale, although usual, is no necessary part of the mortgage, and need not be co-extensive with its conditions. It cannot do away with any condition actually expressed, and could only be resorted to for explanation where there should be some ambiguity requiring such aid. This mortgage is not ambiguous; and the remedy in equity is open for every breach of condition, whether the parties have seen fit to provide for it or not by the power of sale, which is a private remedy by contract, and may be narrowed by agreement to any extent desired.

Complainants, therefore, had a good cause of action, and the decree in their favor is affirmed, with costs.