EQUITABLE TRUST CO. *v.* BARLUM REALTY CO.

1. MORTGAGES—TRUST MORTGAGES—POWER OF SALE—BONDS.
   The power of sale contained in a real-estate trust mortgage securing a bond issue is a matter of contract.

2. BONDS—NEGOTIABILITY—INTEREST IN REAL ESTATE ON FORE-CLOSURE OF UNDERLYING MORTGAGE.
   Notice on the face of a bond secured by a trust mortgage of real estate that in case of foreclosure the bondholder would be compelled to take a pro rata share in real estate held by the trustee would destroy the negotiability of such bond.

3. MORTGAGES — TRUST MORTGAGES — FORECLOSURE — NEGOTIABLE BONDS—PRO RATA SHARE OF REAL ESTATE.
   In equity proceedings to foreclose a trust mortgage securing negotiable bonds which stated they were secured by trust mortgage and were subject to redemption in the manner and upon the terms of such trust mortgage, provision of mortgage that upon foreclosure the trustee, on request of at least 51 per cent. of the holders of the then outstanding bonds covered by the mortgage, might purchase the lands for the benefit of all holders, and depriving all bondholders of any claim to the lands except for his pro rata share of the proceeds of any disposal by the trustee of such premises was unenforceable where negotiability of bond would be destroyed by requiring bondholder to take a pro rata share in real estate and bond did not indicate on its face that he might have to do so.

   BUSHNELL, C. J., and WIEST and BUTZEL, JJ., dissenting.

Appeal from Wayne; Jayne (Ira W.), J.   Submitted October 19, 1939.   (Docket No. 127, Calendar No. 40,817.)   Decided June 19, 1940.   Rehearing denied November 13, 1940.

Bill by Equitable Trust Company, a Michigan corporation, as trustee, against Barlum Realty Corporation, a Michigan corporation, John J. Barlum and wife to foreclose a trust mortgage.   William R. Wilson and other bondholders intervened.   From

decree rendered, defendants and intervener Wilson appeal. Reversed.

*Butzel, Eaman, Long, Gust & Bills* (*Thomas G. Long,* of counsel), for plaintiff.

*George E. Brand,* for defendants.

*Orrin C. Jones,* for intervener Wilson.

BUTZEL, J. (*dissenting*). This is an action to foreclose a trust mortgage. The controversy we are to resolve is focused on a provision of the foreclosure decree authorizing the trustee under the mortgage indenture to bid for the property at the judicial sale on behalf of all the holders of outstanding bonds, and to satisfy the bid by crediting the mortgage debt, without production of the bonds secured by the mortgage.

In June, 1928, the Barlum Realty Company, John J. Barlum and Julia M. Barlum executed to the Federal Bond & Mortgage Company, Incorporated, a Virginia corporation, a trust mortgage to secure a $3,600,000 issue of bonds of the mortgagors. Plaintiff Equitable Trust Company, a Michigan corporation, is the successor trustee. Interest payments have been in default since 1931. Plaintiff filed a bill to foreclose the mortgage in July, 1932; three bondholders were permitted to intervene in January, 1933. A decree of foreclosure was entered in June, 1939, finding that there was due on the mortgage debt the sum of $6,077,002.11, with interest at 6 per cent. from June 30, 1939, and that in default of payment of this sum on or before August 1, 1939, the mortgaged property should be sold to satisfy the obligation. The decree authorized the trustee to bid at the sale and to make good its bid "by crediting the said amount on

the amount then due under this decree'' if purchase by the trustee was requested by the holders of 51 per cent. of the bonds. Eighty-one per cent. of the bonds, totalling the sum of $2,950,100, have been deposited with a bondholders' committee; the appealing intervener's bonds totalling $1,500 have not been deposited with the trustee or any committee. Defendant mortgagors and one of the interveners object to the part of the decree which permits the trustee to satisfy its bid by crediting thereon the mortgage debt if purchase is requested by 51 per cent. of the bondholders. It is claimed: (1) that the mortgage indenture does not authorize the application of the mortgage debt to the trustee's bid without presentation of the outstanding bonds or the express consent of the bondholders; (2) that the bonds and coupons, being negotiable instruments, the mortgage provision would not be enforceable in the absence of notice thereof on the face of the bonds or coupons; and (3) that the decree permitting the trustee to bid for all the bondholders without express consent deprives appellants of their property in violation of the fourteenth amendment to the Federal Constitution.

It is first necessary to determine whether or not the provisions of the trust indenture authorize the decree entered below permitting the trustee to bid for all the bondholders on foreclosure sale without presenting the bonds or obtaining consent of all the bondholders. A similar issue was before us in *Union Guardian Trust Co.* v. *Building Securities Corp.,* 280 Mich. 144 and 280 Mich. 717, where an equally divided court affirmed a decree giving this right to the trustee. Some of us were of the opinion that the indenture did not warrant such a decree because in the article dealing with the foreclosure, the clause providing for purchase at judicial sale, while listing

the trustee as an eligible buyer, declared that bonds could be used toward payment of the purchase price "by presenting such bonds." (Art. 9, § 5 of the indenture in that case.) Article 10 of the same indenture enumerated the liabilities, duties, powers and rights of the trustee, and section 2 thereof aimed to clarify by stating:

"But all powers and rights of action hereunder may be exercised and enforced at all times by the trustee, at its election, without the possession of any of said bonds or coupons, or proof of ownership thereof at any time whatsoever."

In writing for reversal, Justice BUSHNELL said:

"Had the parties intended that the purchase would be made 'without the possession or production of any of said bonds or coupons, or proof of ownership thereof,' the natural place to state such intention would be in article 9, § 5."

He later said that:

"Neither party contemplated that the sentence which begins with the conjunction 'but' would be lifted from the context of its paragraph and read into another article which provides for the terms of purchase, and by such transfusion or grafting process, give added vigor to the carefully chosen language of section 5. Standing alone, the language of section 5 does not provide for purchase by the trustee in the manner permitted by the decree."

The indenture before us now has a full and clear article dealing with the event of foreclosure, and the decree entered in the court below is fully warranted by this article alone without reference to the clarification clause in the later article dealing with the duties of the trustee, or, as stated by Justice FEAD in the *Building Securities Case,* "without dragging the

second sentence of article 10, § 2, from its ambush."
Article 8 of the present indenture deals with fore-
closure, sale and distribution. Section 4 of article
8, in the instant case, like article 9, § 5, in the *Building
Securities Case,* deals with the use of bonds by a pur-
chaser "by presenting such bonds and coupons."
Section 5 of article 8 in the instant case in so many
words warrants the decree entered. There was no
corresponding provision in the *Building Securities
Case.* This section authorizes the trustee or its suc-
cessor, on request of at least 51 per cent. of the
holders of the then outstanding bonds covered by
the mortgage, "to purchase the said lands, leasehold
estate, securities, property and premises embraced
herein for the use and benefit of the holders of the
then outstanding bonds, secured by this mortgage,
and having so purchased said lands, leasehold estate,
securities, property and premises, the right and title
thereto shall vest in said trustee and no bondholder
shall have any claim to the lands, leasehold, securi-
ties, property or premises, or the proceeds thereof,
except for his pro rata share of the proceeds of any
disposal by the trustee of said purchased lands, lease-
hold estate, securities, property and premises."

The requirement of purchase "by presenting such
bonds and coupons" is notably absent. Instead, the
authorization to purchase "for the use and benefit of
the holders of the then outstanding bonds, secured by
this mortgage," has no requirement of payment in
cash or "by presenting such bonds and/or cou-
pons,"—if the trustee may act for all, there is no
need for presentation of bonds or payment in cash.
The bondholders have agreed to place control in a
majority, and on majority approval they have agreed
to become beneficial owners of the property
mortgaged. In this event, presentation of the bonds
is needless, and, therefore, it is not required. The

debt is satisfied to the extent the trustee's bid is credited thereon. Section 5 would be nullified if we are to say that the trustee cannot act on the command of a majority without depositing cash to pay a pro rata share to nondepositing bondholders—the language does not command that this be done, and we would impair the accomplishment of the purpose of this provision by adding such a limitation by construction. Its purpose was to obviate any large cash payment to nondepositors, which payment would otherwise be required if the trustee were to act as purchaser for assenting bondholders at foreclosure sale under an indenture that is not so comprehensive (*Detroit Trust Co.* v. *Stormfeltz-Lovely Co.*, 257 Mich. 655 [88 A. L. R. 1263]).

The next problem is whether or not the rights of an objecting bondholder are limited by the majority provision in the indenture. The trial court based its decree on *Sage* v. *Railroad Co.*, 99 U. S. 334, in which the indenture gave the trustee power to bid for all, in language closely akin to that in the indenture before us now. Appellants seek to distinguish that case and say that the provisions are unenforceable because the bonds before us are negotiable in form and contain on their face, they claim, no binding notice of the indenture limitations. They claim further that this objection was not raised in the *Sage Case* but should be considered here. The bond itself, while not incorporating the trust indenture, informs the holder that it is ''one of a series of bonds * * * equally and ratably and without priority or preference of any bond over the other for any reason whatsoever, secured by a trust mortgage dated June 15, 1938, duly executed and delivered by the mortgagors to the Federal Bond & Mortgage Company, Inc., of the city of Detroit and State of Michigan, as trustee.'' There is a further declaration that the

bond is "subject to redemption * * * in the manner and upon the terms set forth in said trust mortgage. * * *

"In case of default * * * of any of the covenants or conditions of said trust mortgage, the principal of this bond may become due and be declared due and payable before its regular maturity * * * as provided in said trust mortgage."

The contention fails when we are mindful that the issue of the securities involved the creation of two separate contracts. In *Mendelson* v. *Realty Mortgage Corp.*, 257 Mich. 442, Justice FEAD stated:

"It is a fact, recognized alike by business and the law, that a bond and its securing mortgage have different functions, are governed by different legal principles, and, for some purposes at least, are separate contracts. *Paepcke* v. *Paine*, 253 Mich. 636 (75 A. L. R. 1205). * * *

"Primarily, a bond is a contract to pay, the mortgage is a separate contract to secure payment."

In *Gilfillan* v. *Union Canal Co. of Pennsylvania*, 109 U. S. 401 (3 Sup. Ct. 304), Chief Justice Waite stated:

"Mortgages of the kind of that executed by this company are of a peculiar character, and each bondholder under them enters by fair implication into certain contract relations with his associates. Such bondholders are not, like stockholders in a corporation, necessarily bound, in the absence of fraud or undue influence, by the will of the majority, when expressed in the way provided by law, but they occupy, to some extent, an analogous position towards each other."

In the *Sage Case*, the court pointed out that the complaint of the intervening bondholders was "respecting the disposition which the court decreed to

be made of the property, in case the trustees of the mortgage should become the purchasers." In answering this objection, the court stated that the bondholders had arranged for the contingency of a judicial sale so that there could be a purchase for the common benefit of all. It was said:

"To carry out these intentions a majority of the bondholders was empowered to act controllingly for the entire body, in matters respecting the purchase and disposition of the property purchased, subject to the limitation that the purchase, if made by the trustee, should be for the use and benefit of the outstanding bonds. * * * The agreement, though unusual, was a reasonable one. * * *

"Such was the contract and such the power conferred upon a majority of the bondholders. It was such a contract which the bills brought before the circuit court for a decree. In view of its provisions we cannot think it was error to decree, as the court did, that the mortgaged property should be sold to the highest and best bidder, and that the trustee should be authorized and directed to bid at the sale, as trustee for the first-mortgage bondholders, at least the amount of principal and interest of the first-mortgage bonds. * * *

"We see no error in the decree, so far as it required any other persons than the trustee under the first mortgage, if he became the purchaser at the sale, to pay at once in cash a part of his bid, as earnest money. Such other purchaser, of course, must be a cash purchaser, at least to the extent of the sum due on the first mortgage. * * * That the same requirement was not made of the trustee was very proper, for the reason that a purchase by the trustee required no payment of money, beyond a sum sufficient for costs, unless the bid exceeded the sum due on the first mortgage, the purchase being made for the first-mortgage bondholders."

The holders of negotiable bonds may not at their liking elect to ignore completely their security contract when it has been called into action by foreclosure. Nor are any rights taken away when a court of equity administers the foreclosure and specifically enforces such provisions in the security contract as are called upon here to give effect to the agreed will of a majority. The very institution of foreclosure under the indenture affects by operation of law the rights of the holders of the bonds and brings the entire transaction within the aegis of a court of equity. Section 14367, 3 Comp. Laws 1929 (Stat. Ann § 27.1135), provides that:

"After such bill shall be filed, while the same is pending, and after a decree rendered thereon, no proceedings whatever shall be had at law for the recovery of the debt secured by the mortgage, or any part thereof, unless authorized by the court."

See, also, amendment by Act No. 169, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14367), providing for consolidation with the foreclosure suit of all cases begun subsequent to the foreclosure action by holders of evidence of indebtedness secured by the mortgage. Once the transaction is brought into a court of equity on foreclosure, as authorized by the indenture, equity should give effect to all of its terms. It will not do to say that equity may not do so because all the terms of the security contract were not incorporated in the bond. In *Grant* v. *Railway Co.*, 85 Minn. 422 (89 N. W. 60), in disposing of the claim that the bondholder was without notice of the terms of the mortgage, the court said:

"Where such a railway bond contains a clear statement that it is one of a series of bonds secured by a mortgage to a trustee upon the property of the railway, every proposed purchaser is thereby advised

that if he buys he will be brought into contract relations with his co-bondholders, and that his absolute rights in respect to the foreclosure of the mortgage, or the collection thereby of the principal or interest of his bond, are limited by the provisions of the trust deed and the peculiar nature of the security.''

What we say here does not apply to a no-action clause in an indenture which is sought to be used to thwart the attempts of uninformed bondholders to collect on the bonds before the institution of foreclosure proceedings. In *Guardian Depositors Corp.* v. *David Stott Flour Mills, Inc.,* 291 Mich. 180, it was held by a majority of the court that the restriction on the right to sue at law must appear on the face of the bonds to bind the holder, but this ruling has no application when foreclosure is under way, for then the right to sue is controlled by statute, 3 Comp. Laws 1929, § 14367 (Stat. Ann. § 27.1135).

Appellants' last claim is that they are entitled to payment in money ''either perforce the personal obligation or resort to the security,'' and that the decree deprives them of that right, in contravention of the fourteenth amendment to the Federal Constitution. The argument is without merit. The decree merely enforces the contract according to its terms.

''By the agreement, the entire body of the bondholders consented to place their interests, to a certain extent, under the control of a majority of their number.'' *Sage* v. *Railroad Co., supra.*

Due process has been accorded in substance as well as in form.

The decree should be affirmed.

Bushnell, C. J., and Wiest, J., concurred with Butzel, J.

Potter, J. The bonds issued provided:

"The holder * * * shall have all the rights of a holder in due course for value and without notice, * * * and this bond shall have all other attributes of a negotiable instrument."

The power of sale contained in the real-estate mortgage collateral thereto was a matter of contract. *Butler* v. *Ladue,* 12 Mich. 173; *State Bank of Bay City* v. *Chapelle,* 40 Mich. 447. There was nothing on the face of the bonds indicating the holder thereof would be compelled, in case of foreclosure, to take a pro rata share in real estate held by the trustee. If there had been such notice, it would have destroyed negotiability. If I understand the holding, a negotiable instrument is made nonnegotiable by a contract to which the negotiable instrument does not refer, and such foreclosure in equity may reach out and destroy negotiability and compel the holder of a negotiable instrument to accept something he never contracted to take.

"It seems, however, the more reasonable, ethical and business-like approach is to demand that the restriction upon the right to sue for payment of the note or bond on maturity should appear upon the face thereof." *Guardian Depositors Corp.* v. *David Stott Flour Mills, Inc.,* 291 Mich. 180.

Here, though nothing indicates any restraint on the right to sue, yet, on foreclosure, equity may destroy that negotiability which before existed and a bond which is negotiable on its face becomes non-negotiable, a contract to pay thereupon becomes a contract not to pay, and that which should appear upon the face of the bond is controlled by that of which the bond gave no notice.

SHARPE, NORTH, and MCALLISTER, JJ., concurred with POTTER, J. CHANDLER, J., did not sit.