## AITON v. SLATER.

1. APPEAL AND ERROR—JUDGMENT—PARTNERSHIP—PROCESS.
   Entry of judgment in action on contract of guaranty against defendants individually and doing business as copartners did not prejudice defendants who had been served with process as individuals where process was amended at opening of trial without objection so as to include after the names of defendants the descriptive words "individually and doing business as the copartnership," since each of them could and would be held personally liable on a judgment entered against them as partners.

2. PARTNERSHIP—SERVICE OF PROCESS.

Entry of judgment in action on contract of guaranty against obligor defendants doing business as copartners was not error notwithstanding defendants were not served with process as partners where declaration charged them as partners, all members of the partnership had appeared and admitted in their answer they were partners, and process was amended at opening of trial so as to refer to them as partners without objection.

3. HUSBAND AND WIFE—PARTIES—BEARER BOND.

Under record in action on contract of guaranty of payment of a bearer bond showing that it had been purchased with money withdrawn from joint account of plaintiff and her husband, that bond with accompanying contract of guaranty was delivered to, and retained by, them until his death, and that thereupon plaintiff took individual possession thereof and retained such possession until commencement of action, action was properly brought by plaintiff as owner of the bond (3 Comp. Laws 1929, § 13071).

4. BONDS—BEARER—NEGOTIABILITY—REFERENCE TO TRUST MORTGAGES.

A bearer bond containing an unconditional promise for the payment of a certain sum on a certain date with interest at a specified rate was not rendered nonnegotiable by inclusion of general reference to trust mortgage, securing its payment, for a statement of the rights of the holder including provision that bond might be redeemed before maturity.

5. GUARANTY—BEARER BOND—PARTIES—REAL PARTY IN INTEREST.

Holder of bearer bond to which was attached contract guaranteeing payment of that particular bond could maintain action on contract of guaranty notwithstanding contract provided for payment to trustee under trust mortgage securing payment of the bond since, under such provision, the trustee merely represented respective bondholders, and since bondholder was the real party in interest she could sue in her own name (3 Comp. Laws 1929, § 14010).

6. SAME—BEARER BOND—DEFAULT ON BOND.

Action could be maintained by holder of negotiable bearer bond upon attached contract guaranteeing its payment upon default in payment of the bond or accruing coupons without having first proceeded against obligor on the bond.

7. ASSIGNMENTS—COLLATERAL.

Generally, unless provided by contract otherwise, an assignment carries with it all securities held by the assignor as collateral to the claim and all rights incidental thereto and vests in the assignee the equitable title to such collateral securities and incidental rights.

8. GUARANTY—BEARER BOND—ASSIGNMENT BY OPERATION OF LAW.

An action may be maintained by the holder of a negotiable bearer bond upon an attached contract of guaranty of payment thereof notwithstanding there was no specific assignment of the attached contract as the transfer of the bond to plaintiff carried with it the rights of the transferor in the attached contract by virtue of an assignment by operation of law.

9. SAME—BEARER BOND—THIRD PARTY BENEFICIARY.

An action may be maintained by transferee-holder of a negotiable bearer bond upon a contract of guaranty attached thereto by .virtue of being a third party beneficiary under the guaranty agreement notwithstanding third party beneficiary statute would have to be applied retroactively (Act No. 296, Pub. Acts 1937).

10. SAME—ASSIGNMENT.

While a contract of guaranty is not, strictly speaking, a negotiable instrument, it is assignable.

11. BILLS AND NOTES—BEARER INSTRUMENT—GUARANTY OF PAYMENT.

The holder of a negotiable instrument payable to bearer, in event of nonpayment, possesses the right to bring suit against one who has guaranteed payment.

12. SAME—FULFILLMENT OF PURPOSE—TRANSFER OF INSTRUMENT TO WHICH GUARANTY OF PAYMENT WAS COLLATERAL.

The full purpose of contract of guaranty attached to negotiable bearer bond was not fulfilled when required by lender of money unless payment of such bonds, given as collateral to note, was guaranteed by defendant obligors merely upon securing of loan or repayment of loan where subsequently bonds were transferred to lender which in turn transferred them to plaintiff and her late husband.

13. LIMITATION OF ACTIONS—NEGOTIABLE BEARER BOND—ACCELERATION OF MATURITY.

Under negotiable bearer bond providing for payment of principal on a specified date but containing clause authorizing acceleration of maturity upon default in payment of interest, the failure to exercise the option did not cause period of statute of limita-

tions to run before its regular maturity; hence bondholder could maintain action brought on contract of guaranty within statutory period after the regular maturity date (3 Comp. Laws 1929, § 13976).

Appeal from Oakland; Holland (H. Russel), J. Submitted April 15, 1941. (Docket No. 62, Calendar No. 41,524.) Decided June 30, 1941. Rehearing denied September 2, 1941.

Assumpsit by Florence M. Aiton against O. A. Slater and others on a guaranty. Judgment for plaintiff. Defendants appeal. Affirmed.

*Monaghan, Crowley, Clark & Kellogg* (*Bartlette E. Nutter*, of counsel), for plaintiff.

*Erwin O. Slater* and *Robert D. Heitsch*, for defendants.

NORTH, J. The Standard Gravel Company, a Michigan corporation, in December, 1928, issued bonds in the amount of $75,000 bearing interest at the rate of 6½ per cent. annually which were secured by a trust mortgage. Plaintiff herein became possessed of one of these bonds in the amount of $1,000, designated as No. M-33. There was attached to this bond a guaranty agreement executed by the "Slater Construction Company, By O. A. Slater, Pres." The Slater Construction Company was a copartnership composed of the defendants herein. The guaranty agreement in part provided: "The Slater Construction Company does hereby guarantee the payment of the principal and interest according to the bond and coupons attached, * * * and hereby waive notice of default, dishonor and protest." The Standard Gravel Company defaulted

in the payment of its bonds, and plaintiff brought this suit at law to recover on the above-mentioned guaranty agreement the amount of her bond and unpaid coupons. On trial in the circuit court without a jury, the plaintiff had judgment for $1,567.50. For reasons hereinafter noted, the defendants assert that there was error in rendering judgment in favor of plaintiff, and they have appealed.

The first question urged in appellants' brief is that under the circumstances of this record the trial court was in error in entering judgment against defendants "as copartners doing business as the Slater Construction Company;" because the process issued and served upon each of the defendants was entitled against and addressed to defendants as individuals only, not as a copartnership. There was no designation on the process that the action was against the defendants as copartners. But at the very opening of the trial, plaintiff's counsel called the above to the attention of the circuit judge and moved to amend the process so that after the names of the defendants the following descriptive words would appear: "individually and doing business as the copartnership." The court thereupon inquired if there was objection on the part of defendants, and the following colloquy occurred:

"*Mr. Slater:* I assume when the plaintiff moves to amend on that basis that he is not asking relief against the individuals?

"*Mr. Nutter:* No, I am asking relief against them as a copartnership.

"*The Court:* Any judgment which you ask for is against the copartnership, as such?

"*Mr. Nutter:* That is right.

"*The Court:* Very well, then the amendment may be made with that understanding and you may proceed."

Notwithstanding the judgment entered ran against the defendants "individually and as copartners doing business as the Slater Construction Company," we think they have no reason to complain. The amendment was made without objection on the part of defendants; and each of them could and would be held personally liable on a judgment entered against them as copartners. Under the circumstances they were not prejudiced by the entry of the judgment against them both individually and as copartners. Nor do we think there is merit to defendants' contention that the judgment entered against the copartnership was erroneous because process was never served on the copartnership as such. As a matter of fact, all of the individuals composing the copartnership were before the court represented by counsel in a case wherein the declaration, to which defendants had filed an answer, alleged defendants were copartners, that they guaranteed payment of plaintiff's bond, and had neglected and refused to pay the same, in consequence of which she brought suit. In their answer defendants admitted they were copartners doing business as the Slater Construction Company. Since all the individuals constituting the partnership had appeared, had pleaded, and were before the court ready for trial in a case wherein they were charged as partners, the circuit judge was justified in proceeding with the case on the theory that the partnership was before the court.

Other questions raised require an additional statement of facts. Plaintiff and her husband, now deceased, had a joint account in one of Detroit's banks. Prior to 1931 they withdrew $1,000 from their account and purchased the bond in suit from the Farmers State Savings Bank at Milford, Michigan. The bond with the guaranty agreement attached was

delivered to plaintiff or her husband and retained by them until the husband's death; thereupon plaintiff took individual possession of the bond and retained such possession continuously until suit was brought. We are fully satisfied from the record that as the survivor of her husband plaintiff became the owner of the bond which had formerly been the joint property of herself and husband. 3 Comp. Laws 1929, § 13071 (Stat. Ann. § 26.211). The bond was payable to bearer, and has never been paid. In fact, payment was neither pleaded nor seriously contended by defendants.

As bearing upon the circumstances under which the guaranty agreement became attached to this bond, the following should be noted. The defendants herein as copartners constituted the Slater Construction Company. Two of the defendants were actively interested in the Standard Gravel Company, a corporation. Olney A. Slater was president of the corporation, and Franklin A. Slater, Jr., secretary. The Standard Gravel Company desired to secure a loan. It gave its note for $5,000 to the Farmers State Bank of Milford and as collateral to its note the bond now held by plaintiff and several other bonds were deposited with the bank. The loan was eventually paid, but in some manner not too clearly disclosed by the record the bank became the owner of the bond in suit. At the time the loan was sought, the bank was unwilling to accept the bonds as collateral unless their payment was guaranteed by the Slater Construction Company and thereupon that company executed and attached to the bond now held by plaintiff the following guaranty.

"For a valuable consideration in hand paid to Slater Construction Company, a copartnership com-

posed of Olney A. Slater, Franklin A. Slater, Jr., and Albert M. Slater, the receipt of which is acknowledged, the Slater Construction Company does hereby guarantee the payment of the principal and interest according to the bond and coupons attached, issued by Standard Gravel Company, a Michigan corporation, bearing date December 1, 1928 (Pontiac Trust Company, trustee), and designated as bond M-33 for $1,000, due December 1, 1936, and coupons attached, at the time and place provided therein, and hereby waive notice of default, dishonor and protest, and upon default of any payment provided therein the undersigned promise and agree to pay the trustee, aforesaid, immediately the amount so in default.

"In witness whereof Slater Construction Company hereunto sets its hand and seal this 16th day of December, 1929.

"Slater Construction Company,
"By O. A. Slater, Pres."

Defendants assert that plaintiff can claim nothing under the above-quoted guaranty because the agreement to pay in the event of default was "to pay the trustee," that the purpose of this guaranty was fulfilled prior to the purchase of the bond by the bank or by plaintiff and her husband; and further that the guaranty agreement is not a negotiable instrument or an assignable chose in action, nor did it become such by reason of its having been attached to the bond.

In considering these contentions of defendants, the question arises as to whether the bond held by plaintiff is a negotiable instrument. Defendants assert it is not; but we hold otherwise. Without quoting the bond in full it is sufficient to note that by its terms the Standard Gravel Company "acknowledges itself to owe, and for value received hereby promises to pay the bearer * * * $1,000

on the 1st day of December, 1936, with interest * * * at the rate of six and one-half per cent. per annum." It further provides that the coupons attached to the bond "shall always be transferable by delivery merely." But the bond also contains the following provisions, which are stressed by defendants: that it and the other bonds secured by the trust mortgage are made subject "to all of the provisions" of the mortgage or deed of trust "with the same effect as if the same were herein fully set forth, to which mortgage or deed of trust reference is hereby made for a description of said property, the nature and extent of the security and the rights of the holders of the bonds issued thereunder. * * * This bond * * * is issued, received and held subject to all terms and conditions of said mortgage or deed of trust." In this connection defendants stress the contention that since plaintiff's bond and the other bonds of the issue incorporate a reference to all of the provisions of the mortgage, negotiability must be tested by the terms of the trust mortgage, not alone from the face of the bonds. It is not contended that this trust mortgage contains a no-action clause, but it is pointed out by defendants that article 2, § 3, of the trust mortgage provides that at its option the mortgagor may redeem certain of the bonds, including plaintiff's bond, "in advance of maturity," by calling the bonds, and if they are not surrendered upon the mortgagor's making with the trustee a deposit of the amount due on a bond not surrendered, the holder of the bond thereafter must look solely to the deposit for satisfaction of his bond and such bond "shall cease to be entitled to any benefit of the lien of this indenture." It is not shown by this record, nor is it contended, that the mortgagor in the instant case ever took any action under the noted

provision of the trust mortgage. But aside from this, under the most recent decisions of this court, it had been definitely adjudicated that the quoted reference in the bond to the provisions of the trust mortgage does not deprive the bond of negotiability. In *Guardian Depositors Corp.* v. *David Stott Flour Mills, Inc.*, 291 Mich. 180, as in the instant case, the holder of bonds which contained an express obligation to pay the bearer a specified sum at a fixed time brought a suit at law on the bonds; and as against the defense urged that under the terms of the trust mortgage, which contained a no-action clause, the suit could not be maintained, recovery by plaintiff was affirmed notwithstanding there was a general reference in the bond to the terms and provisions of the trust mortgage. In the opinion subscribed by the majority of the court the following rule was adopted:

"The mere reference to the indenture for a statement of the rights of the holders is not enough to take away by implication, drawn from another instrument, plaintiff's right to sue upon defendant's positive acknowledgment of an unconditional promise to pay the debt."

Following the above quotation, our opinion definitely states:

"By thus requiring express notice on the bond, we preclude repeated litigation to determine whether the referential language in any kind of bond issue is adequate or not. We eliminate once and for all the vexing problem of negotiable corporate bonds."

Still more recently, in *Equitable Trust Co.* v. *Barlum Realty Co.*, 294 Mich. 167, 177 (130 A. L. R. 1343), we referred approvingly to our decision in the *Guardian Depositors Corporation Case.*

Nor are we in accord with defendants' further contention that notwithstanding the guaranty agreement on which plaintiff has brought this suit was attached to the bond, still such guaranty contract does not take on the aspect of negotiability or assignability. We are of the opinion that by the very terms of the guaranty agreement the Slater Construction Company made it a part of the bond to which it was attached. This was done before delivery of the bond to the first purchaser. The agreement specifically provides guaranty of "the payment of the principal and interest" of the bond "designated as bond M-33 for $1,000 due December 1, 1936, and coupons attached." This is the identical bond in suit. Plaintiff and her husband with their joint funds purchased this bond and became holders thereof with the guaranty attached. Under the circumstances the guaranty agreement was sufficient, upon default in payment of the bond or accruing coupons, to justify suit by the holder of the bond against the obligor on the guaranty agreement. This being a guaranty of payment, there is no merit to defendants' contention that plaintiff could not maintain her suit against a guarantor until she had first proceeded against the obligor on the bond. *Roberts* v. *Hawkins,* 70 Mich. 566; *National Security & Trust Co.* v. *Niles Invisible Door Check Co.,* 222 Mich. 510; *Rider* v. *Coyne,* 246 Mich. 365; *Midwest Commercial Credit Co.* v. *Meyers,* 251 Mich. 16. Being attached to the bond and becoming a part thereof, the guaranty was obviously made for the benefit and protection of whoever might become the real party in interest, *i.e.,* the bearer of bond No. M-33. Under such circumstances the guaranty obligation could be enforced the same as the bond, notwithstanding the guaranty ran to a trustee as obligee. The trustee

merely represented each of the bondholders, and as to bond No. M-33 the trustee represented the holder of that bond. Plaintiff, being the real party in interest, could sue in her own name. 3 Comp. Laws 1929, § 14010 (Stat. Ann. § 27.654).

"The general rule applicable to assignments of choses in action, is, that the assignment, unless there is a contract to the contrary, carries with it 'all securities held by the assignor as collateral to the claim and all rights incidental thereto, and vests in the assignee the equitable title to such collateral securities and incidental rights.' 4 Cyc. pp. 69, 70, 71. * * * Under this rule it was immaterial, that the guaranty was not assigned, at the same time the notes were, as the assignee had the same rights to subject the securities to payment of the debts, as the assignor had." *McGowan* v. *Wells' Trustee,* 184 Ky. 772, 782 (213 S. W. 573).

The substance of the law above quoted is the established law in this jurisdiction. In *Atwood* v. *Schlee,* 269 Mich. 322, we held that the right to a mortgage, given to secure a note, passes by transfer of the note to the transferee, and this notwithstanding the mortgage was not assigned and the bank to which the note was transferred was unaware when it took the note of the fact that its payment was secured by the mortgage. See, also, 2 Jones on Bonds and Bond Securities (4th Ed.), § 776; 3 Daniel on Negotiable Instruments (7th Ed.), p. 1625, § 1578; 2 R. C. L. p. 633.

While seemingly unnecessary to decision of the instant case, it may be noted that under recent decisions of this Court plaintiff could maintain her action as a third party beneficiary under the guaranty agreement; and such is the law notwithstanding it would necessitate retroactive application of the statute. See Act No. 296, Pub. Acts 1937

(Comp. Laws Supp. 1940, § 14063-1 *et seq.*, Stat. Ann. 1940 Cum. Supp. § 26.1231 *et seq.*) ; *Hutchings* v. *Securities Exchange Corp.*, 287 Mich. 701; *Guardian Depositors Corp.* v. *Brown*, 290 Mich. 433.

To some extent appellants, in denying plaintiff's right of recovery, rely upon *Tinker & Webb* v. *McCauley*, 3 Mich. 188, wherein the syllabus reads: "A negotiable promissory note, and a guaranty of its payment contemporaneously indorsed thereon, are separate and distinct undertakings, creating distinct liabilities as it respects the maker and guarantor. Such guaranty is not negotiable." But it must be borne in mind that decision in the *Tinker & Webb Case* is confined to the proposition that a guaranty contract is not of itself a negotiable instrument. The case does not hold that the rights under such guaranty may not pass by actual assignment or assignment by operation of law. In the later case of *Waldron* v. *Harring*, 28 Mich. 493, it is said:

"The court below decided that the guaranty could not be sued by any but the first holder, and that plaintiff could not bring an action on it in his own name. No one can suppose, when a guaranty is given in the unrestricted form used here, that it was not intended to pass with the note, which was payable to bearer. The rules which prevent its negotiability, in the strict sense of that term, have never been supposed to interfere with its assignment. All personal claims of this sort are assignable, but at common law they were taken subject to equities, and could only be sued in the name of the first person receiving the guaranty, for the use of the real owner. But the real owner was always entitled to control and enforce them, and to use his assignor's name for that purpose."

In our more recent cases it has been assumed, without being controverted, that the holder of a negotiable instrument payable to bearer, in event of nonpayment, possesses the right to bring suit against one who has guaranteed payment. See *National Security & Trust Co.* v. *Niles Invisible Door Check Co., supra.* And such, we think, is sound law.

Under the record before us we hold that the transfer of the negotiable bond to plaintiff as the bearer thereof resulted in an assignment of the guaranty agreement by operation of law to plaintiff. We are not herein confronted with the question as to what defense or right of counterclaim might have been asserted by the obligor on the guaranty agreement, if any such had existed, against the bank as the original purchaser of the bond to which the guaranty agreement was affixed. Defendants assert no claim of that character. The guaranty agreement was affixed to the bond when it was first sold to the bank. The bank as holder of the bond clearly had the additional security of payment arising from the guaranty agreement. Notwithstanding defendants' contention to the contrary, we hold that the full purpose of the guaranty had not been fulfilled prior to the purchase of the bond by the bank. Defendants' contention in this particular is not sustained by the record.

Nor can we agree with defendants' contention that plaintiff's cause of action is barred by the statute of limitations. 3 Comp. Laws 1929, § 13976, as amended by Acts Nos. 21, 193, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 13976, Stat. Ann. 1940 Cum. Supp. § 27.605). The bond in suit did not become due until December 1, 1936. The six years' period has not yet expired. The mere fact that the bond contained a provision that in case of default in payment of interest or principal "the principal of this bond *may* become due and payable before

its regular maturity," only gave the option of accelerating maturity. The option was not exercised and the statutory period did not begin to run against the bond "before its regular maturity," December 1, 1936.

The judgment entered in the circuit court is affirmed, with costs to appellee.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, WIEST, and BUTZEL, JJ., concurred. McALLISTER, J., took no part in this decision.