## In re BARLUM REALTY CO.

### BRAND v. NATIONAL BANK OF DETROIT et al.

#### No. 10063.

Circuit Court of Appeals, Sixth Circuit.

April 5, 1946.

George E. Brand, of Detroit, Mich. (George E. Brand, of Detroit, Mich., on the brief), for appellant.

James E. Littell, of Detroit, Mich. (James E. Littell, of Detroit, Mich., on the brief), for appellee National Bank of Detroit.

C. J. Odenweller, Jr., of Cleveland, Ohio (Roger S. Foster, of Philadelphia, Pa., and Charles J. Odenweller, Jr., of Cleveland,

Ohio, on the brief), for Securities and Exchange Commission.

Before SIMONS, MARTIN, and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The Barlum Realty Company, a Michigan corporation, is in reorganization under the provisions of Chapter X of the Bankruptcy Act, §§ 501–676, Title 11, U.S.C.A. The appellant, George E. Brand, an attorney, appeals from an order of the District Court entered May 23, 1945, which denied his claim for legal services in the amount of $6,000 with interest as a preferred claim and allowed it merely as a general claim against the debtor.

Appellant's claim arose out of the following facts:

In 1929 the appellant became attorney for the debtor Barlum Realty Company, and its president John J. Barlum and his wife in connection with a controversy between them and a mortgage company which was the trustee under a $3,600,000 bond issue mortgage indenture executed to the trustee covering the debtor's Barlum Tower office building in Detroit. This controversy was adjusted by a series of written agreements which provided among other things for controlled management of the Tower property and for delivery of the net income thereof to the trustee.

On July 5, 1932, the indenture trustee filed in the Wayne County Michigan Circuit Court an action to foreclose the debtor's mortgage. A proposed decree was tendered which gave the indenture trustee the right to use in bidding outstanding bonds uncontrolled by it or the bondholders committee. The appellant representing the debtor and John J. Barlum and wife, together with other dissenting bondholders, filed objections to the decree on January 18, 1933. On June 30, 1939, the objections were overruled and the decree was entered as proposed. Because of the serious consequences it was believed would follow if the property was bid in by the trustee pursuant to the decree, and it later developed that the decree was erroneous in respect to the right of the trustee to bid for non-assenting bondholders, it was deemed to be in the interest of the debtor and of the bondholders that the decree be reviewed. As a result the debtor, the Barlums, and William R. Wilson, a bondholder, on July 20, 1939, appealed the decree to the Supreme Court of Michigan. On June 19, 1940, Equitable Trust Co. v. Barlum Realty Co., 294 Mich. 167, 292 N.W. 691, 130 A.L.R. 1343, the Michigan Supreme Court ruled that the decree was erroneous in its provisions that the trustee had the right to bid in behalf of non-assenting bondholders.

In the meantime, on April 19, 1935, an involuntary petition for reorganization of the debtor under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, was filed in the United States District Court for the Eastern District of Michigan. The debtor by the appellant as its attorney filed its answer to the petition and also a motion to dismiss. The appellant made an extended court argument on the motion. An amended petition was subsequently filed followed by orders of reference to two successive masters. The appellant participated in numerous conferences. However, no hearings were ever held pursuant to either of the reference orders and thereafter in 1942 the petition was dismissed for want of prosecution.

On October 2, 1939, sale of the Barlum Tower was held pursuant to the foreclosure decree, notwithstanding the fact the appeal to the Michigan Supreme Court was then pending. The property was struck off to the indenture trustee pursuant to the provisions of the decree for the benefit of all bondholders for $2,400,000. The appellant on behalf of the debtor and the Barlums filed written objections to confirmation of the sale, which had not been acted upon by the trial court at the time the appeal in this action was taken.

John J. Barlum died on September 18, 1940. The indenture trustee, the committee and their counsel indicated a desire to bring matters to a head. The problem of completing the foreclosure sale without the use of the uncontrolled bonds existed. The appellant suggested that the problem could be greatly simplified and a plan of reorganization more easily consummated if all unsecured claims against the Barlum Realty Company and majority of the stock of said Company could be acquired by the trustee or bondholders. The majority of said stock had been pledged with two Detroit banks to secure notes signed by Barlum Realty Company for approximately $200,000. He also suggested the possibility that if $10,000 were made available the claims of the bank and his own claim for legal services and the pledged stock could be acquired. The suggestion was received

with interest. Appellant conferred with the two banks indicating to them that he would accept $6,000 and assign to the trustee or bondholders his claim for legal services, that the remaining $4,000 would be divided between the two bank creditors, that appellant would ask that an additional $2,000 be made available for the acquisition of unpledged stock standing in the name of Thos. Barlum, deceased, and John J. Barlum, deceased, and that he would also request that William R. Wilson be retained as the manager of the Barlum Tower for a reasonable period. The representatives of the banks indicated their willingness to recommend disposal of their claims and of the pledged stock on the suggested basis. Various negotiations followed but no written agreement was entered into. Steps were taken so that an offer could be made to the Barlums' estate for the decedents' unpledged stock. Authorization was secured to enable the bank creditors to accept an offer of payment for their claims against the debtor and the surrender of its pledged stock for the sum of $4,000. In June 1941, in anticipation of the closing of the transaction, appellant entered a compromise charge of $6,000 against the debtor for his services to June 26, 1941, and asked leave to withdraw as debtor's attorney. On June 28, 1941, the trustee reported to bondholders for the period of July 1, 1940, to June 30, 1941, in which report, after reference to the pending foreclosure proceedings and the Michigan Supreme Court decision, it was stated—"Negotiations were then entered into by the committee for the acquisition of the equity of redemption prior to the holding of a new sale. A tentative understanding was reached so that no adverse litigation is now going on. However, there are a number of slow moving and time consuming details to be worked out."

Appellant, who had also arranged for the acquisition of the unpledged stock for $1300, became embarrassed because the banks had taken the necessary steps to make delivery of their claims and the stock pledged therefor, yet the funds therefor were not forthcoming due to the committee's objection to the use therefor of funds held by the trustee and because the committee was unwilling to consent to any definite period of the retention of Wilson as manager of the Barlum Tower Building. Appellant was consequently compelled to devote a great deal more of his time and effort to holding the matter together so that the stock and claims would be available. Finally, because of this embarrassing delay, appellant suggested to the trustee that the claims and bank stock should be taken up so as not to lose the deal. Wilson was willing to pay the banks the $4,000 and to pay the Barlum estates $1,300 for the unpledged stock and thereafter to turn it over to the trustee for the amount paid upon the later completion of the transaction by the trustee. No objections being made thereto Wilson on or about July 15, 1941, acquired the bank claims and all of debtor's stock for a payment of $5,300. Repeated subsequent efforts by appellant to bring about the consummation by the trustee of the acquisition of the claims and stock and an agreement regarding the retention of Wilson as manager were unsuccessful. On July 11, 1942, Wilson made a written proposition to the committee with reference to the transfer by him to the committee of the stock and claims against the Barlum Realty Company and a contract retaining him as manager of the building. On August 13, 1942, the committee answered Wilson expressing its approval of the proposition with certain modifications. Wilson was unwilling to accept this counterproposal. Consequently the committee did not acquire the equity of redemption represented by the corporate stock.

The pending Chapter X proceedings, out of which this appeal arises, were instituted August 17, 1943. On October 19, 1943, an order was entered for intervention of the Securities and Exchange Commission and notice of its appearance was filed. Appellant entered his appearance on November 18, 1943. On December 14, 1943, the appellee, National Bank of Detroit, was appointed trustee. On February 16, 1944, the District Judge entered an order, without notice to appellant, directing the indenture trustee to turn over the funds on hand to the National Bank of Detroit, trustee. On February 28, 1944, and pursuant to this order approximately $345,000 was turned over to the trustee herein. On July 1, 1944, appellant filed in this proceeding his claim and petition as to services, setting out in detail the foregoing facts. It prayed entry of an order determining that he be entitled to receive from debtor's trustee herein $6,000 plus interest from July 1, 1941, and directing payment thereof upon delivery by appellant of an assignment of all unpaid claims of appellant for legal

services heretofore rendered to the debtor in connection with the foreclosure proceedings, Michigan Supreme Court pro ceedings, and in the 77B proceedings, and in the acquisition of the bank claims and stock by Wilson, which assignment the appellant tendered. Objection was made by the trustee and by M. M. Wardell, one of the petitioning creditors, to the allowance of the claim upon any basis other than as an unsecured claim, for the reason that the services rendered for which compensation was sought were all rendered to Barlum Realty Company prior to these proceedings. No objection was made to the amount of the claim which apparently is recognized by all parties as a very reasonable one. On May 23, 1945, the District Court ordered that the claim be denied as a preferred one but allowed as a general claim against the debtor. It is conceded that in view of the financial condition of the debtor herein there are no prospects of satisfying any general claims against it.

■ Appellant apparently concedes that his claim for legal services is not authorized by the statutory provisions of Chapter X, §§ 241–243 of the Bankruptcy Act, §§ 641–643, Title 11, U.S.C.A. It is well established as a matter of law both under § 77B and Chapter X that legal services rendered prior to the institution of reorganization proceedings and not in direct contemplation thereof are not compensable. In re Ulen & Co., 2 Cir., 130 F.2d 303; In re Buildings Development Co., 7 Cir., 98 F.2d 844; Stark v. Woods Bros. Corp., 8 Cir., 109 F.2d 969. Appellant contends, however, that these statutory limitations do not apply to a situation like the present one in which the claim is not a reorganization claim but is a claim against the debtor's property in the hands of the indenture trustee and which attaches to that property before it has been turned over to the trustee in reorganization. Reliance is placed upon the decision of the Circuit Court of Appeals for the 3rd Circuit in In re Cosgrove-Mechan Coal Corporation, 3 Cir., 136 F.2d 3; certiorari denied, 320 U.S. 777, 64 S.Ct. 91, 88 L.Ed. 466.

■ Appellant's position would be sound if the foregoing facts were sufficient to give him either a lien or a priority claim against the funds while they were in the hands of the indenture trustee. When a court takes over a debtor's property upon the institution of a reorganization proceed-ing, that property is taken subject to pre-existing rights established by the local state law. Kennison v. Kanzler, 6 Cir., 4 F.2d 315, 317. In re Cosgrove-Mechan Coal Corporation, supra, it was held that the claim under consideration was not a reorganization claim but was a claim against the debtor's property arising out of circumstances that in equity entitled it to consideration for priority of payment out of the fund which the services had produced, and as such was a matter for appropriate treatment in the plan of reorganization. An essential difference is at once noticed between that case and the present one. In the present case the services for which priority is now claimed created no fund to which the claim could attach or out of which it could be paid. Accordingly, the only question for determination is whether appellant's services to the debtor prior to the institution of reorganization proceedings were such as would in equity entitle him to a prior claim against the accumulated rents in the hands of the indenture trustee or would subject such rents to an equitable lien in his favor.

Appellant's argument in support of his equitable claim against the sequestered funds, whether it be considered in the nature of a claim for priority or a claim of an equitable lien, is in substance that he performed legal services which were of value to the indenture trustee, for the payment of which the indenture trustee became obligated, and that the indenture trustee is entitled to liquidate this obligation by use of the trust property against which he has a lien for indemnity. Trust, Restatement, Section 244. We do not believe this contention is sustained by the facts. The appellant was not at any time the attorney for the indenture trustee. On the contrary, he represented the Barlum Realty Company, its president John J. Barlum and his wife. His services in the state court were on behalf of those clients, and his claim for such services is accordingly against the corporation and those individuals rather than against the indenture trustee. Any claim against the indenture trustee must necessarily arise out of a different contract. The facts as hereinabove outlined fail to show the final consummation of any such contract between the appellant and the indenture trustee. The appellant made several suggestions which apparently were considered with approval by both the indenture trustee, the creditor banks and

566

the estates of two decedents holding stock of the debtor, and while most of the terms of the proposed contract were finally acquiesced in, yet at no time did the various parties come to a complete and final agreement. The appellant made every effort to close the proposed transaction, but was never able to get all the parties in complete agreement. The retention of Wilson as manager of the Tower building was at least one item that could not be agreed upon. A reference to his claim and petition filed herein does not disclose any allegation that such a contract was finally agreed to. It states that his suggestion was received with interest, that no written agreement was entered into, that he negotiated with the bank creditors, that a tentative understanding was reached, that he entered a compromise charge of $6,000 in anticipation of the closing of the transaction, that repeated efforts were made to bring about the consummation of the proposed plan, but that the bondholders committee and Wilson, who had purchased the claims and stock, were eventually unable to come to any agreement with respect to their transfer by Wilson to the committee. In the absence of such a contract obligation against the indenture trustee appellant necessarily fails to establish any equitable lien or priority claim against the funds in the hands of the indenture trustee. His claim remains one against his clients for legal services rendered prior to the reorganization proceedings and not in contemplation thereof.

Appellant's final contention is that the scope of review is limited to a consideration by this Court of whether the claim is an allowable reorganization expense under the statute, since that was the only question raised by the objectors and considered by the trial court. It is well settled in the review of judicial proceedings that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L. Ed. 224. See Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626. Appellant's statement of facts was accepted by appellees and the question thus presented was purely one of law. See Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037; Helvering v. Richter, 312 U. S. 561, 61 S.Ct. 723, 85 L.Ed. 1043; Com-

missioner v. Central National Bank, 6 Cir., 119 F.2d 470.

The order of the District Court is affirmed.