WATSON *v.* LYNCH.

MORTGAGE FORECLOSURE—SALE—AUTHORITY OF SHERIFF.

* In a foreclosure sale by advertisement, the notice specifying that the mortgagee will make the sale, the sheriff is not authorized to make it, except upon instructions from the mortgagee.

---

* Head-note by GRANT, J.

Appeal from Ogemaw; Sharpe, J.   Submitted June 5, 1901.   Decided July 2, 1901.

Bill by Annette H. Watson against Sanford Lynch, Libbie Lynch, Clarence J. Phelps, sheriff, Myron H. French, Fremont F. French, Charles Magnassan, and Leonhard Gruner and Caroline P. Ellis, executors of the last will and testament of Joseph J. Ellis, deceased, to set aside a foreclosure sale and to foreclose the mortgage. From a decree for complainant, defendants appeal.   Affirmed.

Complainant resides in Dexter, Washtenaw county.   In 1886 she loaned to defendant Sanford Lynch $400, and took a mortgage upon certain lands lying in Ogemaw county. Defendant French subsequently purchased the land, subject to the mortgage, and conveyed it by quitclaim deed to defendants Gruner and Ellis, executors of the estate of Joseph J. Ellis, deceased, and they conveyed it to Hudson P. Ellis.   On June 19, 1899, the mortgagee proceeded to foreclose said mortgage by advertisement.   One King, of Ann Arbor, was her attorney.   Notice was published as required by law; the sale to take place on September 16th, at 10 o'clock in the forenoon.   The amount due upon the mortgage was about $450.   At the day of sale, defendant Phelps, the sheriff, opened the sale at the time appointed, adjourned it until the arrival of the afternoon train, and then sold the land to Hudson P. Ellis, who was then the owner, and bid it in as the agent for Gruner and Mrs. Ellis, the executors of the estate of Joseph J. Ellis.   The land was worth fully twice the amount of the sale.   Mr. Ellis testified that it was worth the amount of the mortgage.   There was evidence that it was worth more than this.   The reason for the postponement of the sale, given by Mr. Phelps, was that he had received no instructions from the mortgagee, and that he might get instructions, or that some one might come, on the afternoon train.   Two days after the sale Mr. Phelps wrote Mr. King as follows:

"I write you today, informing you that Saturday, September 16th, at the time advertised, I sold a certain description of land at mortgage foreclosure sale.   As I heard nothing from you or the mortgagee, Mrs. Annette Watson, and not knowing where she lived, at the time as advertised I opened the sale at 10 o'clock, and held the sale open for the space of five and one-half hours, or until the p. m. mail came from the south, thinking some instructions might come.   But, not hearing anything from you, I offered the same for sale, and have in my care two hundred and seventeen dollars and seventy cents in cash, which is the amount the property brought.   *   *   *   As you are the attorney for the mortgagee, please advise me as to the disposition of this money."

Mr. King immediately replied, repudiating the sale, and asked him by whose order or by what authority he presumed to make it, inasmuch as he had received no instructions from either King or Mrs. Watson.   Complainant soon after filed this bill to set aside that sale and to foreclose the mortgage.   Proofs were taken in open court, and a decree entered for the complainant.

*William T. Yeo,* for complainant.

*Merrie H. Abbott* and *Charles S. Abbott,* for defendants.

GRANT, J. ( *after stating the facts* ).   Several objections are raised to the validity of the sale, one of which is valid, and entitles complainant to relief.   The sale was advertised to be made by the mortgagee, and not by the sheriff. Mr. Phelps, as sheriff, had received no authority or instruction from complainant or her attorney to make the sale. Complainant had written a letter to him, not as sheriff; but this letter, while received before the sale, remained in his desk unopened until several days afterwards.   In this letter she said:   "Various estimates of the property have been given me.   You will undoubtedly know very nearly the exact value, and I make the request that you bid off the land for me, and oblige."   If he had received this letter and read it, it would not have authorized him to make the sale that

he did.    Under its authority it would have been his duty
to attend the sale and bid the property in for complainant,
or procure some one else to bid for her to the amount of her
mortgage, if the land was worth that much.    It needs no
argument to show that the sheriff may not watch the news-
papers to see what sales are advertised in foreclosure cases,
and then assume the authority to appear and make the sale
without any instruction from the mortgagee, unless the
notice is such as to show the authority conferred upon
him.    The mere fact that the statute authorizes such
a sale to be made by the sheriff does not confer upon him
any such authority as is claimed in this case.    The mort-
gagor may have paid between the last day of the publica-
tion of the notice and the day of sale, or he may have paid
before, without the withdrawal of the notice from publi-
cation.    The sheriff has no right to assume such authority,
and the purchaser has no right to assume that the sheriff
has been authorized by the mortgagee to make the sale.
It is not a case where the purchaser can be protected as a
*bona fide* one, or the mortgagee can be estopped to deny
the authority to sell.

The decree is affirmed, with costs.

The other Justices concurred.