**Willie B. TURNER, Plaintiff-Appellant,**

v.

**IMPALA MOTORS, Defendant-Appellee.**

**No. 73-1826.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 30, 1974.

Decided Sept. 20, 1974.

G. Philip Arnold, Memphis and Shelby County Legal Service Assoc., Memphis, Tenn., on brief for appellant.

James A. Crislip, Memphis, Tenn., on brief for appellee; Gary K. Smith, Memphis, Tenn., of counsel.

Before WEICK, CELEBREZZE and PECK, Circuit Judges.

PECK, Circuit Judge.

Tennessee Code Annotated (T.C.A.) § 47-9-503 [1] is the State of Tennessee's statutory implementation of the Uniform Commercial Code's § 9-503 which authorizes a secured creditor to peacefully repossess collateral. The provision is generally known as the self-help repossession provision. This case presents the issue as to whether peaceful repossession under the Tennessee statute is action under the color of state law within the meaning of 42 U.S.C. § 1983 [2] and state action within the meaning of the due process clause of the Fourteenth Amendment. [3] Upon motion of the defendant-appellee, the District Court dismissed the suit for failure to state a cause of action and this appeal followed. District Judge Garrity has characterized this issue as "one of the liveliest on the current judicial scene." Boland v. Essex County Bank, 361 F.Supp. 917 (D.Mass. 1973). [4]

In terms of private repossession, the facts before us offer a classic example.

Plaintiff-appellant Turner purchased a 1965 Buick LaSabre in June of 1972 from the defendant-appellee Impala on a conditional sales contract. Turner executed a promissory note specifying a payment schedule of twenty-five dollars per week for twelve weeks, with the remaining balance to be paid at the rate of twenty dollars per week.

The record does not indicate the circumstances of the default but the actual payments were erratic from the beginning. The contract included a provision that "in default of payment of this note, or any part of it, said payee [Impala] may take possession of said property in any manner they [sic] may elect, and dispose of same without recourse to law . . . . "

Almost seven months after the purchase, Turner apparently defaulted on his note and without notice the auto was repossessed from a curbside on a public street. The incident occurred in the early afternoon of a weekday after Turner parked his auto in front of his mother's house. Turner had left his five-year-old son in the auto and the keys to the auto in his pocket, but the agent of Impala was not deterred. The young child was removed therefrom and the auto sped away. The record indicates that there was no hearing to determine either contractual obligations or the rights to possession.

---

1. 47-9-503. Secured party's right to take possession after default.—Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under § 47-9-504. [Acts 1963, ch. 81, § 1 (9-503).]

2. 42 U.S.C. § 1983 (1970): Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding . . .

3. U.S.Const. Amend. XIV, § 1: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

4. This issue was expressly not before this Court in Huber v. Union Planters National Bank, 491 F.2d 846 (6th Cir. 1974).

Turner contends that the Tennessee statute is unconstitutional and that it authorizes a deprivation of property without due process. He principally relies on Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), which held that notice and a hearing are required before the execution of a pre-judgment writ of replevin. According to the appellant, the Tennessee statute allows a creditor to circumvent the requirements of notice and hearing and yet replevy his property. He contends that although the case ostensibly involves private conduct, the presence of state action is indicated by the fact that the state has intervened, authorized and encouraged repossession by secured creditors by conferring upon them special powers and exemptions from legal requirements placed on all others. Appellant also argues that the Tennessee statute, similar to the replevin statutes in *Fuentes*, deprives the debtor of his rights to notice and an opportunity to be heard. The waiver provision contained in the contract does not, appellant contends, necessarily exclude the requirements of notice and a judicial hearing on the issue of the waiver prior to the repossession. The waiver provision allows the creditor to take possession upon default.

Before we consider the constitutional dimensions of the matter before us, we must first examine the key question of jurisdictional requisites. The concept of state action as required by the Fourteenth Amendment has been found to be virtually synonymous with the "under color of state law" requirement of § 1983. United States v. Price, 383 U.S. 787, 794–795 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); Palmer v. Columbia Gas of Ohio, Inc., 479 F.2d 153, 161 (6th Cir. 1973). *But cf.,* Adickes v. S. H. Kress & Co., 398 U.S. 144, 211, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (Brennan, J., concurring and dissenting). Appel-

lant would have us hold that the self-help repossession which took place upon the default on a private contract providing for such repossession is an act under color of state law and thus constitutes state action within the scope of the Fourteenth Amendment. If the repossession did not constitute state action but rather only an individual invasion of individual rights, the alleged wrong cannot be remedied under the auspices of the Fourteenth Amendment. Civil Rights Cases, 109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835 (1883).[5] The presence of state action allows the invocation of the basic procedural safeguards announced in Sniadach v. Family Finance Corp., *infra*, and Fuentes v. Shevin, *supra*.

Instances of private conduct have been found to involve sufficient state action[6] but each such conclusion should be the product of "sifting facts and weighing circumstances . . . ." Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). However, a mere finding that state action is present is insufficient. The state action must rise to the level of significant involvement. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1971).

The constitutional attacks on creditors' tactics such as peaceful repossession or formal legal processes gained support with Mr. Justice Douglas' majority opinion in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). In that case a garnishment action had been instituted in a state court whose rules allowed the service of summons and complaint upon the alleged debtor's employer. The effect was to freeze the alleged debtor's wages until the merits of the case had been decided. The debtor was not required to be notified at the time of service upon the employer and there was no

---

5. State action has been described as a "catch-phrase." See Black, "State Action," Equal Protection and California's Proposition 14, 81 Harv.L.Rev. 69, 88 (1967).

6. See the partial listing of examples cited in Palmer v. Columbia Gas of Ohio, Inc., *supra*, 479 F.2d at 161.

opportunity for the debtor to obtain a hearing or judicial scrutiny of the creditors' claims. The debtor was restricted to either showing that the suit was brought in bad faith or posting a bond in the amount of the garnishment. With Mr. Justice Black dissenting, the Supreme Court held that the Court Clerk's ex parte issuance of a summons pursuant to the state statute constituted state action and that the prejudgment wage garnishment without prior notice and opportunity for a hearing deprived the debtor of property without due process of law in violation of the Fourteenth Amendment.

Subsequently, the Supreme Court in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), speaking through Mr. Justice Stewart, held that certain state statutes providing for the summary seizure of personal property by means of a prejudgment replevin procedure involving the sheriff's execution of a writ issued by a court clerk violated the due process clause of the Fourteenth Amendment insofar as it denied a debtor the right to notice and the opportunity for a hearing prior to the loss of any possessory interest in that personal property.[7]

However, in the recent case of Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), it would appear that Fuentes has been effectively overruled. See concurring opinion of Powell, J., id. at 623, 94 S.Ct. 1895, and the dissenting opinion of Stewart, J., id. at 629, 94 S.Ct. 1895. In Mitchell, judicial sequestration procedures in Louisiana, similar to the replevin statutes struck down in Fuentes, allowed a creditor to obtain, on an ex parte basis from a judicial authority, a writ of sequestration upon submission of an affidavit and posting of a security bond. Thereupon a public official, without providing notice and a hearing to

the debtor, seized the property. Distinguishing judicial control over the process from the court clerk's control in Fuentes, the Supreme Court found the procedure was not invalid.

Prior to Mitchell, the challenge to the Commercial Code's self-help repossession provisions generated considerable litigation. However, the only federal appellate courts to have met the issue to date have failed to find significant state action present. Gibbs v. Titelman, 502 F. 2d 1107 (3rd Cir., filed August 1, 1974); James v. Pinnix, 495 F.2d 206 (5th Cir., 1974); Nowlin v. Professional Auto Sales, Inc., 496 F.2d 16 (8th Cir. 1974), citing Bichel Optical Laboratories, Inc. v. Marquette National Bank, 487 F.2d 906 (8th Cir. 1973); Shirley v. State National Bank of Connecticut, 493 F.2d 739 (2d Cir., 1974); Adams v. Southern California First National Bank, 492 F. 2d 324 (9th Cir. 1973), rev'g sub nom. Adams v. Egley, 338 F.Supp. 614 (S.D. Cal.1972), petition for cert. filed, 42 U.S.L.W. 3707 (U.S. June 25, 1974).

It is the district court's opinion in Adams that remains the most frequently cited case finding the requisite state action. In that case, the court relied upon Reitman v. Mulkey, 387 U.S. 369, 87 S. Ct. 1627, 18 L.Ed.2d 830 (1967), wherein the Supreme Court found that state action existed when private housing discrimination was authorized by a provision of the California constitution. Even though the California constitution did not require discrimination in the sale and rental of housing, the Court stated that the provision in question would "significantly encourage and involve the State in private discriminations" contrary to the Fourteenth Amendment. Id. at 381, 87 S.Ct. 1627. Similarly, the District Court in Adams held that the California enactments of the U.C.C. encouraged and involved the state in private repossession and sale, as demonstrated by their incorporation in

---

7. Although state action in self-help repossession cases was neither at issue nor discussed in Fuentes, the Court noted in contrasting self-help and replevin that creditors may "proceed without the use of state power,

through self-help . . . ." Supra, at 79 n. 12, 92 S.Ct. at 1993. Self-help and replevin can be distinguished constitutionally on the basis of the state's involvement.

the security agreement. Appellants here have mounted that same challenge.

On appeal, the Ninth Circuit held that there was not sufficient involvement by the State of California to constitute state action. *Adams, supra,* 492 F.2d at 329. The Court distinguished *Reitman* as being a racial discrimination case having limited application to the self-help repossession cases and relied on the finding that the California statute merely codified the existing common law. The court also rejected the contention that the repossession was effectively a public function.

■ We are likewise persuaded that *Reitman* cannot be relied upon to justify a finding of state action here. Our opinion in *Palmer* notwithstanding, 479 F.2d 153 (6th Cir. 1973), we view *Reitman* as dealing with a state attempt to accomplish indirectly what it was prohibited from doing directly. We cannot ignore the fact that the context of onerous racial discrimination in which the case was set demanded special scrutiny. The injustices of racial discrimination cast a different shadow than that of the case now before us.[8] See Oller v. Bank of America, 342 F.Supp. 21, 23 (N.D. Cal.1972).

Our opinion in *Palmer* likewise responded to a different circumstance. There we considered the policies of a company with monopolistic character whose business was to provide a necessity of life and whose activities and operations were pervasively and significantly regulated by governmental and quasi-governmental regulations and statutes.

We therefore concluded that the state thereby achieved a position of joint participation with the company. *Id.,* 479 F. 2d at 165. *See also* Burton v. Wilmington Parking Authority, *supra,* 365 U.S. at 726, 81 S.Ct. 856.[9]

Appellant makes the principal point that the private activity before us should be viewed as encouraged by the statute and therefore a finding of state action is justified. While acknowledging that the point has a measure of merit, we do not find it persuasive.

■■ It is clear that in this case the state did not exert any control or compulsion over the creditor's decision to repossess. The private activity was not commanded by the simply permissive statute. While mere existence of the statute might seem to suggest encouragement, we conclude that the effect of the statute is only to reduce a creditor's risk in making repossessions. As a practical matter, a creditor's decision is more likely to be principally influenced by the economics of the situation than by the presence of a permissive statute.

We fail to see where the creditor has sought to invoke any state machinery to its aid.[10] Rather, the creditor has simply relied upon the terms of its security agreement pursuant to the private right of contract. Compare Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Assuming that the statute was non-existent, the remedy of self-help repossession could still be utilized based on its common law heritage[11] and the private right to contract. We fail to see how the creditor is attempting to en-

---

8. Although we recognize that the Civil Rights Act has application to cases involving the deprivation of property rights as well, *see* Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), and Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), we are still faced with the problem of finding the presence of state action.

9. But compare, Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), where the Supreme Court stated that it would not base a holding of state action upon a mere finding that "the private entity receives any sort of benefit or service

at all from the State, or [that] it is subject to state regulation in any degree whatever . . . . [S]uch a holding would utterly emasculate the distinction between private as distinguished from state conduct." 407 U.S. at 173, 92 S.Ct. at 1971.

10. See Watson v. Kenlick Coal Co., 498 F.2d 1183 (6th Cir. 1974).

11. The common law of Tennessee allowed repossession of personal property under conditional sales contracts without resort to legal process where the purchaser had agreed to repossession as a contractual matter. Morrison v. Galyon Motor Co., 16 Tenn.App. 394, 64 S.W.2d 851 (1932).

force any right in reliance upon a constitutional or statutory provision as in *Reitman* or is even asserting any state-created right. Rather, we see a creditor privately effectuating a right which was created in advance by contract between the parties. At best, the right is one that is merely codified, but not created, in the statute.[12]

Appellant also argues that the statute authorizes an individual to perform the governmental function of seizing private property. As stated previously, the statute merely codified and did not create any right or state power. Were we to rely upon the mere fact of codification, we would in part be making available to a complex matrix of human behavior, as regulated by statutes, the scope of federal remedies. We decline to establish that precedent, particularly under the circumstance of a statute that is permissive in nature.

The decision of the district court is affirmed.

12. Insofar as *Palmer*, 479 F.2d 153 (6th Cir. 1973), is inconsistent herewith, it is modified.